# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRIAN R.**,

       *Plaintiff,*

   v.

**COMMISSIONER OF SOCIAL SECURITY**,

       *Defendant.*

No. 25-cv-00049

**OPINION**

<u>**APPEARANCES**</u>:

**Jennifer Lilley Stonage**
**Richard Lowell Frankel**
BROSS & FRANKEL, P.A.
725 Kenilworth Avenue, Suite 2
Cherry Hill, NJ 08002

    *On behalf of Plaintiff.*

**Hannah Marie Dawson**
**Shawn Cheree Carver**
SPECIAL ASSISTANT UNITED STATES ATTORNEYS
SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Brian R.'s[1] ("Plaintiff") appeal from a denial of Social Security disability benefits and supplemental security income by the Acting Commissioner of Social Security ("Commissioner"). (ECF No. 4). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

The Court recites herein only those facts necessary for its determination on this appeal.

### A. Administrative History

Plaintiff filed applications for a period of disability and Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI, alleging disability beginning January 18, 2018. (AR 17, 274). Plaintiff met the insured status requirement through September 30, 2023, and therefore needed to establish disability before that date. (AR 18). Plaintiff's claims were initially denied on November 16, 2021, (AR 69–82), and again upon reconsideration on April 1, 2022, (AR 83–96).

Plaintiff thereafter filed a request for a hearing before an Administrative Law Judge ("ALJ") on June 2, 2022. (AR 123–25). A hearing was held on November 28, 2023, at which Plaintiff, who appeared with counsel, and a vocational expert ("VE") testified. (AR 38–68). On January 22, 2024, the ALJ issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (AR 14–37).

---

[1]  Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

Plaintiff sought review by the Appeals Council, which denied the request for review on November 4, 2024, rendering the ALJ's decision the final decision of the Commissioner. (AR 1– 6). Plaintiff thereafter timely commenced this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). (ECF No. 1).

### B.  Plaintiff's Background and Testimony

Plaintiff was born on May 31, 1972, and was forty-five years old at his alleged disability onset date of January 18, 2018. (AR 70). He has a high school education and completed two years of vocational schooling. (AR 42). For approximately nineteen years, Plaintiff worked as a master-certified automobile technician, where his duties included diagnosing and repairing vehicles, including engine repairs and working on transmissions and car stereos. (AR 48). Plaintiff stopped working in 2018, asserting that his physical impairments prevented him from continuing his employment as an auto mechanic. (AR 43, 70).

Plaintiff alleges disability primarily stemming from a work-related back injury sustained in 2017, with associated lumbar degenerative disc disease and stenosis, as well as upper extremity symptoms including numbness and tingling. (AR 274). He also alleges fatigue related to obstructive sleep apnea. (AR 54–55, 841–46).

At the administrative hearing, Plaintiff testified regarding his work history, symptoms, and daily activities. (AR 38–68). He explained that after leaving his job as an auto mechanic, he attempted to support himself by starting a small hot dog cart business. (AR 43). According to Plaintiff, he later converted the cart into a small bus so that he could sit while working. (AR 43). Even with this accommodation, Plaintiff stated that he operates the business only part-time— approximately two days per week for about four hours per day—largely while seated. (AR 43–44, 59).

With respect to his activities of daily living, Plaintiff testified that he is generally able to care for himself but requires some assistance with heavier tasks. He stated that he does not need help dressing, although he has difficulty putting on socks and shoes. (AR 51–52). Plaintiff further testified that he eats many of his meals at a friend's home and that this friend assists him in preparing simple meals. (AR 55). As to household chores, Plaintiff explained that he limits the size of his laundry loads to reduce weight and relies on family members to help with heavier loads, including removing clothes from the dryer and folding them. (AR 55–56). He also testified that he shops approximately once per week for short periods—generally around fifteen minutes—to purchase supplies for his hot dog business, with heavier items, such as soda, typically delivered. (AR 56, 58–59).

Plaintiff testified that he experiences chronic low back pain, with pain on the lower left side of his back and right-sided sciatica that worsens with walking. (AR 49). He described spasms and cramping sensations, requiring him to be cautious when walking on uneven surfaces or using stairs, and stated that his leg will sometimes "give out." (AR 49–50). He stated that he can walk "maybe six houses down" without difficulty and does not use a cane. (AR 56–57). He can sit for five to ten minutes before needing to reposition. (AR 59).

According to Plaintiff, his daily routine is significantly affected by fatigue, which he attributes to sleep apnea. (AR 54–55). He stated that he often attempts light chores in the morning but becomes so fatigued that he must take a nap lasting up to two hours. (AR 54). Although he has been prescribed a CPAP machine, Plaintiff claims that it has only minimally improved his sleep and that he continues to experience poor rest and daytime fatigue. (AR 54–55).

Plaintiff also testified regarding upper extremity symptoms. He stated that he has tendonitis and carpal tunnel syndrome and experiences pain and discomfort on the right side of his body

4

extending from his wrist to his shoulder, as well as numbness and tingling in his fingers for which he takes Gabapentin. (AR 52–53). According to Plaintiff, these symptoms interfere with fine motor skills, grasping, and lifting objects, such as a gallon of milk. (AR 53–54). He further testified that similar symptoms affected his left hand when he was working as an auto mechanic, though those symptoms lessened after he stopped working and are not as severe as his right side. (AR 54).

### C. Medical History

The Court will briefly summarize the relevant medical evidence for purposes of this appeal. This recitation is not comprehensive.

Plaintiff's relevant medical history begins with a work-related low back injury sustained in July 2017. Treatment records reflect that Plaintiff initially injured his lower back while working as an automobile mechanic, reporting pain after reaching under a dashboard. (AR 356). He was treated with physical therapy and a brace and cleared to return to work without restrictions later in 2017. (AR 371–72).

In January 2018, Plaintiff returned for treatment complaining of renewed low back pain, described as left-greater-than-right pain radiating to the groin. (AR 374). He underwent a course of physical therapy from January through February 2018, reporting only mild improvement and continued muscle spasms. (AR 377–78). Medical records from March 2018 indicate that Plaintiff had mild-to-moderate degenerative disc disease. (AR 382–83). Plaintiff received injection therapy but did not report sustained relief, and further injections were not recommended. (AR 390, 401, 406). By mid-2018, treatment notes documented improvement with conservative measures, including regular walking and exercise. (AR 406). Plaintiff reported at that time that he was walking five miles a day, swimming, and doing light exercises at the YMCA. (AR 25, 406). In July 2020, he reported walking three to eight miles per day. (AR 26, 503).

After a substantial gap in treatment, Plaintiff resumed care in 2021. Primary care records from Andrew Blank, D.O., in August 2021 document complaints of chronic low back pain as well as tingling fingers and right shoulder pain. (AR 496–97, 559–63). Plaintiff was diagnosed with low back pain, spinal stenosis, carpal tunnel syndrome, and neuropathy. (*Id.*). His examinations at the time documented normal strength in the upper and lower extremities. (*Id.*).

Plaintiff underwent a consultative orthopedic examination with Juan Carlos Cornejo, D.O., in October 2021. (AR 543–47). Dr. Cornejo concluded that Plaintiff had difficulty bending and turning his neck and back but would be able to walk and stand for a "reasonable amount of time." (AR 546). Plaintiff had a normal gait and was able to heel and toe walk and squat without difficulty. (*Id.*). Although he noted tenderness in the right shoulder and wrist, Dr. Cornejo observed that Plaintiff retained good use of his upper extremities, including reaching and handling fine objects. (*Id.*). Plaintiff's pinch and grip strength and the muscle strength in his upper extremities were graded 5/5. (AR 545). Dr. Cornejo further opined that Plaintiff would have difficulty with physically exertional activity but could perform sedentary activity with breaks. (AR 546).

State agency medical consultants Arthur Pirone, M.D., and James Paolino, M.D., evaluated Plaintiff as part of his disability determination. (AR 70–75, 77–82, 84–88, 91–95). Dr. Pirone conducted the initial evaluation in November 2021, and Dr. Paolino the reconsideration in March 2022. (*Id.*) Both consultants concluded that Plaintiff did not have any severe physical impairments. (*Id.*) Accordingly, the respective disability examiners determined that Plaintiff was not disabled and retained the capacity for work activity. (*Id.*) Among other things, the examiners noted that Plaintiff reported going out every day, shopping, driving a car, operating a lawn mower, doing light chores, and helping his grandmother. (AR 72).

6

Plaintiff continued to complain of and seek treatment for back pain. At a February 2022 visit, Plaintiff's primary care physician, Dr. Blank, diagnosed neuropathy, high blood pressure, mixed hyperlipidemia, and Type 2 diabetes. (AR 680–81). An examination again revealed normal motor strength in the upper and lower extremities. (*Id.*) Dr. Blank subsequently completed a medical source statement in June 2022. (AR 692–694). Dr. Blank diagnosed low back pain, spinal stenosis, and neuropathy, noting symptoms of pain, numbness, and tingling, including in the upper extremities. (*Id.*). However, he further indicated that Plaintiff would not need to lie down or recline at all during the day, and that medication would aid in reducing Plaintiff's symptoms with no side effects or reduction in level of functioning, though no medications were indicated in his report. (*Id.*). Dr. Blank later submitted an update in September 2023 indicating that Plaintiff's condition had not significantly changed. (AR 850).

Dr. Blank referred Plaintiff to Matthew Lesneski, M.D., a pain management specialist, for a consultation and evaluation in June 2022. (AR 732–35). At that visit, Plaintiff complained of sinus problems and joint, back, and neck pain, but reported no muscle aches or weakness, no sleep apnea or sleep disturbances, no difficulty walking, and no fatigue. (AR 733). Examination findings were limited to lumbar and hip tenderness and no upper extremity symptoms were documented. (AR 733–34). Thereafter, at a follow-up visit with Matthew Bardales, PA, in August 2022, Plaintiff did not report fatigue, muscle weakness, or difficulty walking. (AR 724–27). Records indicate an antalgic gait but no limp, walking without use of an assistive device, normal lower extremity strength, lumbar tenderness, and decreased sensation in the right upper thigh. (*Id.*). Dr. Lesneski later completed an undated medical source statement opining that: Plaintiff had significant functional limitations, including limited standing, walking, sitting, reaching, handling, and

fingering; would be off-task during twenty percent of the workday; and would miss more than four days of work per month. (AR 873–78).

Plaintiff was also treated by orthopedist Orin Atlas, M.D., beginning in February 2022. (AR 690). Treatment notes from the first visit reflect that Plaintiff reported left lower back pain that was constant and varied from mild to severe (3 to 9 out of 10) but denied any weakness. (*Id.*). A physical exam revealed 5/5 muscle strength and normal gait. (*Id.*) Dr. Atlas diagnosed degenerative disc disease, lumbar radiculopathy, and lumbar pain, and recommended physical therapy. (*Id.*). At a follow-up visit in April 2022, Dr. Atlas again recommended physical therapy. (AR 689). Thereafter, in May 2022, he recommended a steroid injection. (AR 688). In an undated medical source statement, Dr. Atlas diagnosed degenerative disc disease and lumbar radiculopathy and identified symptoms of back and leg pain with difficulty walking. (AR 862). However, when asked to identify clinical findings supporting these impairments, Dr. Atlas wrote "none," and further indicated that Plaintiff's impairments were not expected to last at least twelve months. (AR 863). Despite this, Dr. Atlas opined that Plaintiff would need to recline frequently, would be off-task ten percent of the workday, and would miss approximately two days of work per month. (AR 864–66).

In connection with his workers' compensation claim, Plaintiff was evaluated by Henry David, D.O., in January 2019, and again by Ralph Cataldo, D.O., in September 2022. (AR 794–805). Both determined that Plaintiff had a permanent partial disability, ultimately reaching eighty percent, due to lumbosacral sprain/strain with disc bulging and herniation. (*Id.*)

With respect to sleep-related complaints, Plaintiff underwent a sleep study in June 2023, which demonstrated severe obstructive sleep apnea, as well as nasal obstruction and chronic sinusitis. (AR 841–46). He was prescribed a CPAP machine. (AR 844).

The record also includes psychological opinion evidence from state agency consultants Ada Liberant, Ph.D., and Jane Shapiro, Ph.D., and a consultative examination by William Dennis Coffey, Psy.D. Dr. Liberant conducted the initial evaluation in October 2021, and Dr. Shapiro the reconsideration in March 2022. Both times, Drs. Liberant and Shapiro each concluded that Plaintiff did not have a severe mental impairment and assessed no more than mild limitations in the four functional areas of mental functioning. (AR 73–74, 86–87). In October 2021, Dr. Coffey conducted a consultative psychological examination, diagnosing a pain disorder with related psychological factors and estimating Plaintiff's intelligence to be in the borderline to low-average range. (AR 535–38). He did not identify any significant mental functional limitations. (*Id.*).

## II.  <u>LEGAL STANDARD</u>

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see also, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) (citation omitted).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id.* The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

### B. Sequential Evaluation Process

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

### III. **ALJ DECISION**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 18, 2018. (AR 19).

At step two, the ALJ found that Plaintiff had one severe impairment—degenerative disc disease of the lumbar spine—because it significantly limited his ability to perform basic work activities. (AR 20). The ALJ found Plaintiff's other medically determinable impairments, including sleep apnea, hypertension, obesity, and diabetes mellitus, to be non-severe because the record reflected only minimal resulting symptoms and limited evidence of persistent, significant functional limitations. (*Id.*). The ALJ likewise found Plaintiff's medically determinable mental impairments to be non-severe, concluding they caused no more than mild limitations in the relevant functional areas, and otherwise imposed no more than minimal work-related limitations. (AR 21–22).

The ALJ also considered Plaintiff's testimony regarding carpal tunnel syndrome, tendonitis in his elbow, numbness in his fingers, and the fact that he took Gabapentin for pain and flares. (AR 20). However, the ALJ concluded that there was no evidence of a diagnosed medically determinable impairment related to the reported upper extremity symptoms that persisted for at least twelve months and resulted in more than minimal functional limitations, pointing to examinations that showed normal strength and function. (AR 20–21).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (AR 23). The ALJ specifically considered Listing 1.15 (Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root) and found that the record did not demonstrate the required imaging evidence of nerve root compromise, corresponding neurological signs such as muscle weakness or

sensory loss, or a documented medical need for an assistive device. (*Id.*). Accordingly, the ALJ concluded that Plaintiff failed to meet his burden at step three, and the sequential evaluation proceeded to the RFC assessment. (*Id.*).

Before making the step four determination, the ALJ found that Plaintiff had the RFC to perform the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (*Id.*). In reaching this determination, the ALJ considered the entire record, including Plaintiff's severe and non-severe impairments, objective medical evidence, treatment history, medical opinion evidence, and Plaintiff's testimony about his symptoms. (AR 22–29). With respect to the objective medical evidence, the ALJ noted that despite Plaintiff's degenerative disc disease, his physical examinations generally reflected normal gait, full motor strength, and largely normal neurological findings, notwithstanding reports of tenderness and pain. (AR 25–26). The ALJ also cited Plaintiff's reported daily activities, including household chores, driving, shopping, assisting family members, socializing, and operating a hot dog cart on a part-time basis, as inconsistent with disabling functional limitations. (AR 24–29).

The ALJ then evaluated the medical opinion evidence under the regulations. The ALJ found the prior administrative medical findings of the state agency medical consultants, Drs. Pirone and Paolino—who concluded Plaintiff had no severe physical impairment—to be unpersuasive because their assessments were inconsistent with later-submitted medical records documenting ongoing back pain and related functional limitations. (AR 27).

The ALJ also found the opinion of consultative examiner Dr. Cornejo, who opined that Plaintiff could perform at least sedentary work, to be unpersuasive. The ALJ found Dr. Cornejo's opinion "vague" and contradicted by the objective medical evidence in the record, including normal exam findings as well as Plaintiff's testimony about his daily activities. (*Id.*).

The ALJ also found the opinions of Dr. Blank and Dr. Lesneski to be unpersuasive. With respect to Dr. Blank, the ALJ noted that he did not provide a function-by-function assessment of Plaintiff's physical abilities. (*Id.*). The ALJ further determined that Dr. Blank's opinion, to the extent it suggested functional limitations, was inconsistent with largely normal objective findings in the record, including normal gait, and intact strength and sensation, as well as Plaintiff's reported daily activities. (AR 27–28). The ALJ found Dr. Lesneski's assessments unpersuasive to the extent they implied disabling limitations for the same reasons. (AR 28).

In addition, the ALJ rejected the medical source statement of Orin Atlas, M.D., finding it unpersuasive due to internal contradictions and inconsistency with Dr. Atlas's own treatment notes, other objective findings, and Plaintiff's reported activities. (AR 28). The ALJ likewise found the workers' compensation evaluations by Dr. David assigning partial disability ratings to be unpersuasive, noting that disability determinations under other programs are not binding and that those opinions conflicted with the generally normal examination findings in the record. (AR 28).

As to mental impairments, the ALJ found the prior administrative findings of state agency psychological consultants Ada Liberant and Jane Shapiro, concluding Plaintiff's mental impairments were non-severe, to be persuasive, as they were consistent with minimal mental health treatment, largely normal mental status examinations, and Plaintiff's daily functioning. (AR 22). The ALJ found the psychological consultative examination by Dr. Coffey neither valuable nor persuasive as an opinion because it did not include a function-by-function assessment of Plaintiff's work-related abilities. (*Id.*).

After weighing this evidence, the ALJ concluded that Plaintiff's lumbar degenerative disc disease resulted in some functional limitations but did not preclude the performance of the full range of light work on a sustained basis. (AR 23–29).

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. (AR 29). Based on the VE's testimony, which was consistent with the Dictionary of Occupational Titles ("DOT"), the ALJ determined that Plaintiff's prior work exceeded the exertional demands of his RFC. (*Id.*). Accordingly, the analysis proceeded to step five. (*Id.*).

At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (AR 29–30). Relying on the Medical–Vocational Guidelines and the testimony of the VE, the ALJ identified representative occupations requiring only light exertion, including mail sorter, price marker, and electronics assembler. (AR 30). The ALJ further found that the VE's testimony was consistent with the DOT. (*Id.*). Thus, the ALJ determined that Plaintiff was not disabled under the Social Security Act. (*Id.*).

## IV. <u>DISCUSSION</u>

In his appeal, Plaintiff makes two principal arguments. First, Plaintiff contends that the ALJ erred in failing to consider his neuropathy diagnosis and obstructive sleep apnea as severe impairments or to consider his limitations from those conditions in the RFC analysis. (Pl.'s Br., ECF No. 5 at 18–25). Second, Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of Drs. Blank, Lesneski, Atlas and David. (*Id.* at 25–30). The Court finds Plaintiff's arguments unpersuasive and, for the reasons that follow, affirms the decision of the ALJ.

### A. The ALJ's Decision That Plaintiff's Neuropathy and Sleep Apnea Were Not Severe Impairments and Corresponding RFC Determination Are Supported by Substantial Evidence

Plaintiff contends that the ALJ erred by not finding his neuropathy or sleep apnea to be severe impairments at step two. (*Id.* at 19–23). In the alternative, he argues that even if those impairments were properly deemed non-severe, the ALJ failed to account for them when

formulating his RFC. (*Id.* at 23–25). The Court is not persuaded that remand is warranted on either ground.

An impairment is considered "severe" at step two if it "significantly limit[s an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The Third Circuit has described step two as a "*de minimis* screening device" intended to weed out groundless claims. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). Accordingly, an ALJ's failure to designate a condition as "severe" is harmless and does not require remand so long as the ALJ continues through the remaining steps of the sequential analysis and considers the condition when formulating the RFC. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

As an initial matter, the ALJ did not err in finding that Plaintiff's sleep apnea or neuropathy were non-severe. With respect to sleep apnea, the ALJ explicitly considered this impairment but found it to be non-severe, citing minimal evidence of significant or persistent functional limitations. (AR 20). Plaintiff points to no objective medical evidence showing any such limitations and argues only that the ALJ failed to credit his testimony, including that his sleep apnea causes fatigue. (Pl.'s Br., ECF No. 5 at 22). However, it is well established that, while a claimant's subjective complaints must be considered, "the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011). Here, the record indicates that the ALJ considered Plaintiff's testimony about his sleep apnea, including that it required him to take a daily two-hour nap, but was unpersuaded given the lack of corroborating objective evidence. (AR 20). That credibility determination is given "great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189 (3d Cir. 2007) (citation omitted).

Plaintiff's argument regarding neuropathy fares no better. The fact that Plaintiff was diagnosed with neuropathy does not by itself establish severity. *Salles*, 229 F. App'x at 145. Plaintiff cites no evidence that neuropathy prevented him from working beyond his own subjective complaints, which, as explained above, the ALJ was not required to credit and the opinion of Dr. Blank/Lesneski[2], which, as explained below, the ALJ considered but rejected. As the ALJ's decision indicates, Plaintiff's testimony about his symptoms is contradicted by objective medical evidence, specifically multiple physical exam findings showing normal motor strength and function in the upper extremities (*see, e.g.*, AR 374, 545–46, 567, 680–81), and the ALJ therefore did not err by discounting it. Plaintiff points to no objective medical evidence supporting his testimony about the use of his hands and arms that would compel a different decision. In sum, although Plaintiff points to a diagnosis of neuropathy in the treatment record, the ALJ permissibly concluded that this diagnosis was not accompanied by objective clinical findings supporting persistent functional limitations that would render it severe.

Further, that the ALJ's decision did not expressly reference a neuropathy diagnosis does not, standing alone, constitute reversible error. An ALJ "is not required to mention any particular medical assessment by name, or to even consider every piece of record evidence." *Jeffrey B. v. Comm'r of Soc. Sec.*, No. 24-1812, 2025 WL 705727, at *6 (D.N.J. Mar. 5, 2025) (citation omitted). Plaintiff testified that neuropathy limits his ability to use his hands and arms. (Pl.'s Br., ECF No. 5 at 20). Here, while admittedly not naming the diagnosis of neuropathy, the ALJ expressly considered Plaintiff's upper-extremity complaints, including numbness in his fingers,

---

[2] Plaintiff cites to AR 701–02 as being the opinion of Dr. Blank. (Pl.'s Br., ECF No. 5 at 21–22). However, as Defendant points out, the signature on these records appears to be that of Dr. Lesneski, not Dr. Blank. (*Compare* AR 695–702 *with* AR 873–78). The ALJ also noted this discrepancy. (AR 28).

carpal-tunnel-type symptoms[3], and treatment with Gabapentin. (AR 20). After evaluating that testimony alongside physical examination findings demonstrating intact strength and hand function, the ALJ determined that the evidence did not support a medically determinable impairment persisting for twelve months and resulting in more than minimal limitations. (AR 20–21). Substantial evidence thus supports the ALJ's conclusion, notwithstanding the absence of an explicit reference to neuropathy. *See Frampton v. Astrue*, 405 F. App'x 112, 113 (9th Cir. 2010) ("The ALJ adequately considered all symptoms arising from [Plaintiff's] alleged impairments, even though the ALJ did not mention every impairment by name.").

Moreover, any determination as to non-severity was harmless because the ALJ did not end the analysis there. Rather, the ALJ found Plaintiff's degenerative disc disease to be severe and continued through the full five-step analysis. (AR 20). Thus, the step two threshold was satisfied. The remaining question is whether the ALJ erred by not accounting for Plaintiff's non-severe impairments in formulating the RFC.

Plaintiff contends that the ALJ erred at step four by failing to account for limitations allegedly caused by neuropathy and sleep apnea when formulating the RFC. (Pl.'s Br., ECF No. 5 at 23–25). The Court is not persuaded. It is well settled that an ALJ must consider all medically determinable impairments—severe and non-severe alike—when assessing RFC. *See, e.g.*, *Danita F. v. Comm'r of Soc. Sec.*, No. 20-13285, 2022 WL 1165724, at *7 (D.N.J. Apr. 20, 2022). At the same time, however, "the ALJ need only include in the RFC those limitations which he finds to be credible." *Salles*, 229 F. App'x at 147 (citation omitted). Further, an ALJ is not required to "set forth and analyze every piece of evidence in the record." *Santiago v. Barnhart*, No. 02-4506, 2006

---

[3] Plaintiff concedes that carpal tunnel syndrome was not medically determinable. (Pl.'s Br., ECF No. 5 at 20).

WL 8449259, at *4 (D.N.J. Aug. 8, 2006), *aff'd sub nom.*, *Santiago v. Comm'r of Soc. Sec.*, 273

F. App'x 211 (3d Cir. 2008) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Rather,

"the ALJ must note the essential considerations upon which the decision was based, with sufficient

specificity so as to enable the reviewing court to decide whether the disability determination was

supported by substantial evidence." *Id.* Here, the Court concludes that the ALJ either reasonably

incorporated impairments related to neuropathy and sleep apnea or appropriately declined to credit

the limitations based on substantial evidence.

    The ALJ expressly stated that he "considered all of the claimant's medically determinable

impairments, including those that are not severe," in assessing Plaintiff's RFC, and evaluated "all

symptoms and the extent to which these symptoms can reasonably be accepted as consistent with

the objective medical evidence and other evidence." (AR 22–23). Though the ALJ's RFC analysis

focused on Plaintiff's severe impairment—degenerative disc disease of the lumbar spine—the ALJ

ultimately concluded that an ability to perform a full range of light work was supported by the

evidence of the whole record, including the objective medical evidence and Plaintiff's reported

activities. (AR 26). Although the ALJ did not separately discuss neuropathy or sleep apnea in the

RFC narrative, the ALJ explained that he considered all impairments and symptoms and, in any

event, could have properly concluded that any limitations stemming from neuropathy and sleep

apnea were not credibly established. As explained above in the context of the severity

determination, Plaintiff points to no objective medical evidence that supports his claims of

limitations resulting from neuropathy and sleep apnea, and those claims are contradicted by

objective medical evidence—including physical exams showing normal strength and function

(*e.g.*, AR 545–46) and medical visits where Plaintiff reported no fatigue, (AR 733)—as well as his

reported daily activities. "Accordingly, to the extent the ALJ found [Plaintiff's] alleged limitations

less than credible, they were properly omitted from the RFC analysis." *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 163 (3d Cir. 2008) (citation omitted).

The ALJ's decision reflects that the ALJ considered Plaintiff's complaints and medical history as a whole and reasonably concluded that additional functional limitations were not warranted. (AR 22–29). In particular, the ALJ relied on objective findings showing intact motor strength in the upper extremities, a history of conservative treatment with no surgical interventions, and Plaintiff's own reports of his daily activities, including grocery shopping, light chores, driving, and operating a hot dog cart. (*Id.*) Thus, substantial evidence supports the ALJ's determination that Plaintiff retained the RFC to perform a full range of light work, and the Court finds no error at step four.

In short, the ALJ properly found that Plaintiff's neuropathy and sleep apnea were non-severe and appropriately considered them in the RFC analysis. The ALJ's findings are supported by substantial evidence and will not be disturbed.

**B. The ALJ Provided a Sufficient and Supported Explanation for Discounting the Medical Opinions in the Record**

Plaintiff next contends that the ALJ failed to properly evaluate the medical opinions of Drs. Blank, Lesneski, Atlas, and David. (Pl.'s Br., ECF No. 5 at 25–30). The Court disagrees. The ALJ adequately articulated why these opinions were unpersuasive or only partially persuasive, and his conclusions are supported by substantial evidence.

An ALJ is not required to adopt a medical opinion in full, even when that opinion is deemed persuasive. Rather, under the revised regulations, the ALJ must evaluate the persuasiveness of medical opinions in accordance with the factors set forth in 20 C.F.R. § 404.1520c, giving particular consideration to supportability and consistency. *E.g.*, *L. L. Y. v. Comm'r of Soc. Sec.*, No. 22-1710, 2023 WL 1883348, at *4 (D.N.J. Feb. 9, 2023). The Third Circuit has made clear

that it is the ALJ—not treating or examining physicians or State agency consultants—who must make the ultimate findings on disability and RFC. *Chandler*, 667 F.3d at 361 (citations omitted). In reaching those findings, the ALJ is entitled to weigh all evidence and is not bound to accept any medical expert's opinion or theory but may instead weigh the evidence and draw reasonable inferences. *Brown v. Astrue*, 649 F.3d 193, 196–97 (3d Cir. 2011) (citation omitted). The ALJ must consider all relevant evidence and must provide some explanation for rejecting probative evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted). The ALJ also has discretion to resolve conflicts in the evidence and determine the extent to which any opinion should be credited. *Brown*, 649 F.3d at 196–97 (citations omitted). The ALJ's factual findings need not follow a particular format, so long as the decision includes sufficient development of the record and explanation of findings to permit meaningful judicial review. *Jones*, 364 F.3d at 505 (citation omitted); *see also Jaclyn G. v. Comm'r of Soc. Sec.*, No. 21-11101, 2022 WL 2116866, at *6 (D.N.J. June 13, 2022) (noting that ALJ decisions are reviewed "as a whole") (citation omitted). Further, "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

With respect to Dr. Blank, Plaintiff's primary care physician, the ALJ found his opinion only partially persuasive. (AR 27–28). Although Dr. Blank identified diagnoses including low back pain, neuropathy, and spinal stenosis, and symptoms such as tingling in the fingers and shoulder pain, the ALJ reasonably noted that Dr. Blank did not provide a meaningful function-by-

function assessment of Plaintiff's physical abilities, such as exertional limitations.[4] (*Id.*). Further, Dr. Blank's statement indicates that Plaintiff does not need to lie down or recline during the day, and that medication could address his symptoms with no side effects. (AR 693–94). The ALJ was entitled to discount these unsupported or internally inconsistent opinions. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). The ALJ further explained that, to the extent Dr. Blank's opinion could be read as supporting functional limitations consistent with light work, it was generally aligned with the objective medical evidence, including exams showing normal motor strength and gait as well as Plaintiff's reported activities of daily living, including operating a hot dog cart, driving, shopping, and performing light household tasks. (AR 27–28)

The ALJ likewise reasonably found the opinion of Dr. Matthew Lesneski, as set forth in his medical source statement, unpersuasive. Dr. Lesneski's finding of functional limitations—such as Plaintiff being unable to walk more than one block at a time and reduced hand and arm function—were inconsistent with both the objective medical evidence and Dr. Lesneski's own treatment records. (AR 28). Those records showed that Plaintiff reported no difficulty walking or muscle weakness. (AR 733). The ALJ also permissibly noted that Dr. Lesneski's opinion was rendered on a check-box form, with little narrative explanation or citation to clinical findings,

---

[4] While a function-by-function analysis is not required for a medical opinion to be credited, the lack of such analysis reduces the opinion's probative value. *See Jones v. Comm'r of Soc. Sec.*, No. 20-03063, 2021 WL 3088214, at *5 n.9 (D.N.J. July 22, 2021). Plaintiff argues that Dr. Blank did provide such an assessment, (Pl.'s Br., ECF No. 5 at 27–28), but provides citations to the record that, as explained above, appear to be signed by Dr. Lesneski.

undermining its supportability[5]. *See* 20 C.F.R. § 404.1520c(c)(1); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Further, the ALJ reasonably found the opinion inconsistent with Plaintiff's reported activities, which reflected greater capacity than Dr. Lesneski opined. (AR 28).

The ALJ provided similar, and adequate, reasons for rejecting the opinion attributed to Dr. Atlas. Specifically, the ALJ noted that Dr. Atlas' assessment of functional limitations was internally inconsistent and contradicted by objective medical evidence and Plaintiff's testimony about his daily activities. (*Id.*). Indeed, Dr. Atlas's opinion, also set forth in check-off format, affirmatively stated that there were no clinical findings supporting his assessed impairments and that they were expected to last only one to three months. (AR 863). His own treatment notes indicate that Plaintiff had 5/5 muscle strength and normal gait, and his proposed treatment was conservative—physical therapy and a steroid injection. (AR 688–90). Dr. Atlas's opinion is also inconsistent with other objective medical evidence in the record, including generally normal physical examinations. These deficiencies went directly to the opinion's supportability and

---

[5] Plaintiff appears to argue that the ALJ erred in giving some weight to Dr. Blank's form, but not the similar forms completed by Drs. Lesneski and Atlas. (Pl.'s Br., ECF No. 5 at 26). However, the ALJ explained that Dr. Blank's form was persuasive only to the extent that it comported with the objective evidence in the record and Plaintiff's reported activities. The same could not be said for those of Drs. Lesneski and Atlas.

consistency, the two most important regulatory factors, and support the ALJ's conclusion that the opinion was unpersuasive.[6]

Finally, the ALJ appropriately discounted the opinions of Dr. Henry David, which were rendered in the context of a workers' compensation evaluation. As the ALJ noted, those opinions are "not inherently valuable or persuasive." (AR 28). They addressed a different legal standard— partial disability under workers' compensation law—and did not translate into specific functional limitations relevant to the Social Security disability framework. *See* 20 C.F.R. § 404.1520b(c)(1); *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Moreover, as explained above, Dr. David's conclusions were inconsistent with the objective findings documented elsewhere in the record and Plaintiff's self-reported activities.

In sum, the ALJ identified the relevant opinions, evaluated them under the proper regulatory standards, and explained—by reference to supportability, consistency, and the record as a whole—why they were unpersuasive or only partially persuasive. This is all the law requires. *Jones*, 364 F.3d at 505. Because substantial evidence supports the ALJ's evaluation of the medical opinion evidence, the Court finds no basis for remand.[7]

---

[6] Plaintiff's contention that the ALJ failed to cite specific medical evidence in the record in rejecting the opinions of Drs. Lesneski and Atlas is without merit. (Pl.'s Br., ECF No. 5 at 26). The ALJ's decision extensively cites contradictory record evidence.

[7] Plaintiff makes a brief reference to Dr. Cornejo's opinion contradicting the ALJ's findings. (Pl.'s Br., ECF No. 5 at 29). Though it is unclear whether Plaintiff is challenging the ALJ's consideration of the same, the Court notes that the ALJ's decision to discount this opinion (AR 27) is supported by substantial evidence. As the ALJ noted, Dr. Cornejo's opinion that Plaintiff is limited to sedentary work is contradicted by his own largely normal examination findings (AR 545–46) and other objective evidence in the record.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner.

An appropriate Order will follow.

**CHRISTINE P. O'HEARN**
**United States District Judge**